■ HELEN T. KRAMNICZ et al., Respondents, v. FIRST NATIONAL BANK OF GREENE et al., Appellants. — GREENBLOTT, J. Appeal (1) from a judgment of the Supreme Court in favor of the plaintiffs, entered February 17, 1967, in Broome County, upon a verdict rendered at Trial Term, and (2) from an order of said Court, entered February 17, 1967, which denied defendant Nationwide Mutual Fire Insurance Company's motion to dismiss the complaint on the ground that the fire insurance binder issued by it to the respondents had been effectively canceled prior to the destruction of their hotel by fire on October 20, 1962. Respondent, Cloverleaf Inn, Inc., is the owner of a three-story hotel, at Sherwood, located in the Village of Greene. The hotel had been built in 1910, and had been purchased by the respondents Kramnicz in 1960 for $56,000. They in turn conveyed the property to respondent Cloverleaf Inn, Inc., a corporation in which they owned 99.5% of the stock. At the time of the purchase, the First National Bank of Greene held a first mortgage on the hotel, in the amount of $10,000. After the purchase, Kramnicz made alterations and repairs to the hotel. When the respondents acquired the hotel, they insured the building for $50,000 and the contents for $10,000. This insurance was purchased from the five appellant insurance companies, except Nationwide. In May, 1962 respondents increased the fire insurance coverage on the building with appellants by $30,000. On September 14, 1962, they procured, through one Ugo Cianciosi, a 60-day binder from appellant Nationwide, increasing the coverage on the building by $55,000 and on the contents by $15,000. On October 20, 1962, the hotel and most of its contents were destroyed in a fire. After a lengthy trial, the case was submitted to the jury for 12 special verdicts. The jury returned a verdict in the amount of $72,000 against the appellant insurance companies. The Trial Judge set aside verdict number nine, holding that respondents, within a reasonable time, did not protect the property from further damage after the fire, as required by the policies. However, he held that the failure of the performance of these terms did not work a forfeiture since no loss had been proven after the fire. The court denied the motion to set aside the remainder of the special verdicts in favor of respondents, except as to verdicts numbered five and six, and as to these, recovery was denied to respondents. The five appellant insurance companies except Nationwide, contend (1) that the trial court committed prejudicial error in denying their motion to amend their answer to allege the defense of arson; (2) that the evidence established that respondent caused the hotel to be set on fire; (3) that the trial court erred in rejecting an offer of proof that the respondent had previous fires of incendiary origin; (4) that the trial court erred by permitting respondent Peter Kramnicz to testify as to the value of numerous items of personal property that were destroyed in the fire; (5) that respondents misrepresented material facts and evaded or falsely answered questions on examinations authorized by the policy, and failed to produce books and records; (6) that the testimony of respondents' expert witness as to the value of the hotel before the fire was based on incompetent

evidence; (7) that the failure of respondents to protect the property from further damage and separate the damaged from the undamaged, as provided in the insurance contracts, deprived respondents of any right to recovery; and (8) that the trial court erred in refusing to permit detailed inquiry as to the reasons why respondents were not granted a liquor license. Appellants set forth a pyramid of inferences of guilt as proof that the fire was not accidental but was set by respondent Peter Kramnicz. However, the testimony indicates that the appellants did not prove their contention. Some accidental causes were eliminated, but not all. The appellants submitted little evidence of probative value that the fire was set. Appellants' own witness, Timmons, on direct examination, offered the opinion that the fire did not start accidentally. However, he never said directly that the fire was set by human hands. On cross-examination, he conceded " The fire is still undetermined as to the exact cause." Subsequently, when he was asked if it was his best conclusion that the cause of the fire was undetermined, he replied, " I'd have to say, yes, sir." It is true, as appellants contend, that arson by the insured would be a complete defense to an action on the fire insurance policies. While the trial court refused to allow appellants to amend their answer to allege this defense, no prejudice was shown since they were permitted to introduce evidence which they allege established arson, and this issue was submitted as a special finding to the jury. The denial of the offer of proof as to prior fires of incendiary origin sustained by the respondents was proper. Such evidence was too speculative and prejudicial, in view of the fact that the offer of proof did not include evidence that respondents had set the previous fires. We cannot agree that the court erred by allowing respondent to testify as an expert to the value of numerous items destroyed in the fire. As to the testimony as to the value of the buildings, reproduction cost less depreciation is competent evidence of value in a fire loss. The purpose of an action on a fire insurance policy is to attempt to put the insured in as good a position as he would have been if no fire had occurred by awarding him the actual cash value of the property lost or damaged. The general rule in New York is that the trier of facts " may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject." (*McAnarney* v. *Newark Fire Ins. Co.,* 247 N. Y. 176.) There was sufficient evidence, in addition to the reproduction approach, including respondent's testimony, to substantiate the jury's verdict. Appellants contend that respondent misrepresented material facts and failed to produce books and records on examinations authorized by the policy. The issue was submitted as a special finding to the jury, which found for respondents. There is sufficient evidence to support this verdict. We agree with the trial court that respondents failed to take adequate measures to protect the property from further damage and to separate the damaged and undamaged property. However, since the appellants offered no proof of any damages other than those caused by the fire and the water used to put out the fire, respondents are still entitled to recover. A policy of insurance should be liberally construed to uphold the contract wherever possible. Since forfeiture is a drastic remedy, failure to comply with the preservation clause should not destroy the insured's right of action when no damage is proven (see *Jablonski* v. *Girard Fire & Marine Ins. Co.,* 113 N. J. L. 469; *Gage* v. *Connecticut Fire Ins. Co.,* 34 Okla. 744). Appellants contend that the trial court erred in refusing to permit them to cross-examine respondent Peter Kramnicz as to the reasons why he was not granted a liquor license. The court refused to permit counsel to go into the history of Kramnicz's prior liquor

applications. The court's ruling was proper, since such testimony raises a collateral issue not shown to have been relevant to the issues of this case or to constitute a recognized exception to the hearsay rule. However, the court did correctly allow into evidence testimony as to the failure to obtain a liquor license, as this affected the value of the property. Appellant Nationwide Mutual Fire Insurance Company contends that the fire insurance binder issued by it to respondent Cloverleaf Inn, Inc., was canceled prior to the fire. A 60-day binder was issued to Cloverleaf Inn, Inc., on September 14, 1962, in the amount of $70,000 on the building and contents. The binder was signed by Ugo Cianciosi, a broker acting both for the owner and as agent of Nationwide. On October 9, 1962, Nationwide mailed a notice of cancellation along with a check for the unearned premium of the binder, to Cloverleaf Inn, Inc., in care of Peter Kramnicz. At the same time, a letter of cancellation was mailed to Cianciosi. Upon its receipt, he telephoned the Kramnicz home, and in the absence of Mr. Kramnicz, talked to his wife. At Cianciosi's request, she went through the mail, which had not yet been opened, to ascertain whether the letter from Nationwide had been delivered. There was a sharp dispute at the trial as to what was said about the letter. Cianciosi testified that he informed Mrs. Kramnicz that the envelope contained a notice of cancellation of the Nationwide binder. Mrs. Kramnicz testified that Cianciosi told her nothing over the phone as regards the contents of the envelope. Cianciosi went to the Kramnicz home, took the unopened envelope from her, left the home and did not communicate with the respondents until October 21, 1962, one day after the fire. It was stipulated that the court should determine the issue, and accordingly, it was not submitted to the jury. The court held that although Cianciosi had no actual authority to revoke the cancellation notice mailed by the company, since he had authority to issue the binder, he had "apparent authority to act in respect of the binder and that his acts * * * effected an estoppel on the part of the defendant, Nationwide, to assert a cancellation." Appellant contends, *inter alia*, (1) that the notice of cancellation sent to the insured's broker was effective to terminate its liability under the contract of temporary insurance, regardless of whether respondents received actual notice of cancellation and (2) that there was no evidence that Cianciosi, the agent who issued the binder, had apparent authority to revoke the notice of cancellation mailed to the insured. Appellant concedes liability to the mortgagee, Atlas, admitting that it did not receive notice of cancellation. Appellant relies in part on the language in the binder specifying that cancellation can be effected by "notice * * * to the representative of the insured placing the risk", arguing that Cianciosi was the representative of respondents. In our opinion, there was sufficient evidence for the trial court to find that Cianciosi was the agent of Nationwide, since he issued the binder, and the general rule is that a broker is not the agent of the insurer unless he had the power to bind the insurer to a contract. (*Mord* v. *Hartford Acc. & Ind. Co.*, 245 N. Y. 279.) A policy cannot be canceled where an insurance company, by its own actions, makes it impossible for the insured to learn that his policy has been canceled. If the insurer (or its agent) sends notice but is some way responsible for preventing its effective receipt, such notice will not be operative to cancel (*Fields* v. *Western Millers Mut. Fire Ins. Co.*, 182 Misc. 895, app. dsmd. 268 App. Div. 1073). It is clear that it was the conduct of appellant's agent which made it impossible for the respondents to learn that their binder had been canceled. As to appellants' contention that Cianciosi lacked authority to effect a revocation of the cancellation mailed by it, the court was justified from the evidence presented, in finding that he possessed apparent authority. Apparent authority has been defined as "such authority as the insurance company knowingly permits such agent to assume, or which it holds him out as

possessing; that is, such authority as he appears to have by reason of the actual authority which he has, or such authority as a reasonably prudent man, using diligence and discretion, in view of the company's conduct, would naturally suppose the agent to possess" (3 Couch, Insurance [2d ed.], p. 530). Here, since appellants' intention to cancel was not brought to the attention of the respondents, they had no knowledge of cancellation such as would require them to look beyond the apparent authority of the agent. Since the agent had authority to issue the binder, he had apparent authority to act in regard to it, and therefore his acts created an estoppel on the part of appellant to assert cancellation. Appellants' contention that receipt of the envelope bearing its trade name constituted sufficient notice to effect a cancellation is also without merit, as is its argument that respondents, having received the letter, should be charged with knowledge of its contents, since it overlooks the fact that, were it not for the agent's intervention, the notice would have been read. Judgment and order affirmed, with costs. Gibson, P. J., Reynolds, Cooke and Greenblott, JJ., concur in memorandum by Greenblott, J.; Aulisi, J., not voting.